# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of North Carolina

JUN 2 9 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

United States of America )
v. )
) Case No. 5:23-mj-1751-JG
Victor Tervonne Scarboro )
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____February 28, 2022____ in the county of ____Johnston____ in the

____Eastern____ District of ____North Carolina____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Poss. with Intent to Distribute Five (5) grams or More of Methamphetamine. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Task Force Officer Jeramy Creech, DEA
*Printed name and title*

Attested to by the complainant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 29 June 2023

_____
*Judge's signature*

City and state: ____Raleigh, North Carolina____

James E. Gates, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT FOR CRIMINAL COMPLAINT

I, Jeramy Creech "an investigative or law enforcement officer", within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

## INTRODUCTION

1. This affidavit is being submitted in support of the Criminal Complaint filed against Victor Tervonne Scarboro.

2. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that a violation of Title 21, United States Code, Section 841(a)(1), distribution of five (5) grams or more of methamphetamine, has been committed by Victor Tervonne Scarboro.

3. I am an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrest for, offenses enumerated in Section 2516 of Title 18, United States Code.

4. I am currently assigned as a Task Force Officer with the Drug Enforcement Administration (DEA), Atlanta Field Division (FD), Raleigh District Office (DO), High Intensity Drug Trafficking Area Task Force Group 2 (HIDTA-2) since March 2017. I am a sworn law enforcement officer employed by the Johnston County Sheriff's Office (Smithfield, NC) with eighteen years of experience. I have been duly deputized by the U.S. Drug Enforcement Administration (DEA), and currently hold

1

the position of a Task Force Officer (TFO) assigned to the DEA in the Raleigh, North Carolina District Office (DO). In this position, I have been responsible for investigating a variety of violations of federal law, including, but not limited to, violations of the Controlled Substances Act. I have experience in, and have received training in, federal law enforcement investigations. I have participated in the execution of numerous search and arrest warrants involving drug offenses and gathered drug and non-drug related evidence. I have supervised and utilized confidential human sources in furtherance of state and federal criminal investigations and have also monitored drug-related conversations and transactions. I have participated in interviews with individuals involved in the distribution and manufacture of controlled substances.

5. I have completed specialized training approved by DEA on the investigation and detection of controlled substances. I have spoken on numerous occasions with informants, suspects, and experienced narcotic investigators concerning the manner, means, methods, and practices that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods of investigating and dismantling such organizations. I have also conducted and participated in prior investigations that have utilized court-ordered interception of wire and electronic communications as an investigative tool to target domestic drug trafficking organizations. I am therefore familiar with the lawful use of electronic and wire surveillance equipment in investigations of narcotics distribution. Through these experiences, I have learned how large-scale drug trafficking

2

organizations operate. I have also become familiar with street terminology relating to the distribution of controlled substances. Through training and participation in investigations of narcotics trafficking I have learned the methods used by narcotics traffickers to buy and sell narcotics, and to conceal their assets, income, and activities from law enforcement authorities.

6.     In connection with my duties as a DEA Task Force Officer, I investigate criminal violations of federal drug laws and related offenses, including, but not limited to, violations of 21 U.S.C. §§ 841, 843, 846, 952, 960, and 963; and 18 U.S.C. §§ 1956 and 1957. In my employment, I have conducted numerous analyses of telephone billing records for telephones used by narcotics traffickers. Consequently, I am familiar with the ways in which drug traffickers operate their illegal enterprise, including, but not limited to, their use of cellular telephones and their use of numerical codes and code words to conduct their transactions. I know that drug trafficking is often furthered by utilizing multiple cellular phones, multiple insulated contacts, pre-paid cellular phones, and phones designated to be used only for incoming or outgoing calls, which is also known as compartmentalization. I know that drug traffickers frequently use cellular telephones subscribed to false names or to persons other than the user. The use of telephones in this manner is designed to help avoid detection by law enforcement.

7.     I am familiar with the methods used by traffickers of cocaine, heroin, crystal methamphetamine and other controlled substances to conduct their business, including, but not limited to, methods of importing and distributing these drugs;

3

use of numerical codes and code words to conceal the illegal nature of their transactions; and use of firearms to protect themselves, their drugs, and drug proceeds.

8. As a member of Raleigh DO HIDTA-2, I investigate violations of the aforementioned federal drug laws. The Raleigh DO HIDTA-2 is comprised of DEA Special Agents, Task Force Officers (TFOs), and intelligence analysts (IAs) from the Greenville Police Department (GPD), Raleigh Police Department (RPD), Wilson Police Department (WPD), Johnston County Sheriff's Office (JCSO), Lenoir County Sheriff's Office (LCSO), Nash County Sheriff's Office (NCSO), Person County Sheriff's Office (PCSO), Wake County Sheriff's Office, Wayne County Sheriff's Office (WCSO), the North Carolina National Guard (NCNG), and the United States Postal Service (USPS).

## PROBABLE CAUSE

9. On February 28th 2022, members of the Johnston County Sheriff's Office (JCSO) Narcotics Division enlisted the assistance of a Confidential Source (CS) to attempt to purchase an ounce of crystal methamphetamine and 3.5 grams of crack cocaine from Victor SCARBORO in Johnston County, NC.

10. JCSO Detectives D. Rantanen, Lt. J. Coats, J. Barbour, and M. Wilson met with the CS at a predetermined meeting location in close proximity to 583 Richardson Road Zebulon, NC. Detective D. Rantanen searched the CS's person and Detective J. Barbour searched the CS's vehicle for any illegal contraband and/or

4

US Currency with negative results. JCSO D. Rantanen provided the CS with $660 USC from the JCSO Drug Fund for the controlled purchase of crystal methamphetamine and crack cocaine from SCARBORO. JCSO D. Rantanen provided the CS with audio and video recording equipment to capture the controlled purchase.

11. At approximately 2:39 p.m., SCARBORO contacted the CS via telephone and said that SCARBORO is at "Pete's" house and was ready for the CS to arrive. The CS knew from previous dealings with SCARBORO that "Pete" is Danny MCCULLERS and resides at 583 Richardson Road Zebulon, NC.

12. The CS arrived at 583 Richardson Road Zebulon, NC and noticed that the vehicle the CS knows SCARBORO had been operating was parked at the residence. The CS walked and sat down inside SCARBORO's vehicle. SCARBORO then asked the CS how much cocaine did the CS want to purchase. The CS responded that he wanted an 8-ball (3.5 grams). SCARBORO then provided the CS with approximately 3.5 grams of crack cocaine and the CS provided SCARBORO with $160 USC. SCARBORO proceeded to make a telephone call to an unknown person and asked the unknown person about quantities of methamphetamine. SCARBORO advised the CS that SCARBORO had to travel to SCARBORO's cousin who resides in the Buckhorn trailer park close by. SCARBORO asked the CS for the $500 USC to purchase the one ounce of methamphetamine in which the CS

5

provided SCARBORO with the $500 USC.

13.     SCARBORO then left 583 Richardson Road Zebulon, NC and arrived back approximately thirty minutes later. SCARBORO placed the one ounce of crystal methamphetamine on the rear tailgate of a truck parked at 583 Richardson Road Zebulon, NC. The CS picked up the one ounce of crystal methamphetamine to complete the transaction.

14.     The CS left 583 Richardson Road Zebulon, NC and traveled back to the pre-determined meeting location and met with JCSO D. Rantanen, J. Barbour, Lt. J. Coats, and M. Wilson. JCSO D. Rantanen took custody of the 3.5 grams of crack cocaine (Exhibit 11), the one ounce of crystal methamphetamine (Exhibit 10), and the audio/video recording devices from the CS. JCSO D. Rantanen searched the CS person while JCSO M. Wilson searched CS vehicle for any illegal contraband and/or US Currency with negative results. JCSO D. Rantanen conducted a field test on the crack cocaine which showed presumptive positive results for cocaine. JCSO D. Rantanen conducted a field test on the methamphetamine which showed presumptive positive results for methamphetamine.

6

15.     DEA TFO J. Creech submitted drug exhibits 10 and 11 to the DEA Mid-Atlantic Laboratory for further analysis.     The DEA Mid-Atlantic Laboratory conducted an examination which showed the one ounce of crystal methamphetamine (Exhibit 10) was 80% purity with 21.34 grams total weight for amount pure. The 3.5 grams of crack cocaine showed 81% purity with 2.42 grams total weight for amount pure.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

7

## CONCLUSION

16.    Based on the foregoing information, your affiant submits there is probable cause

to believe that Victor Tervonne SCARBORO has violated the provisions of Title 21,

United States Code, Sections 841(a)(1), that is, distribution of five (5) grams or more

of methamphetamine.

FURTHER AFFIANT SAYETH NOT.

_____
Task Force Officer Jeramy A. Creech
Drug Enforcement Administration

On this 29 day of JUNE _____ 2023, JERAMY A. CREECH appeared before
me via reliable electronic means, was placed under oath, and attested to the
contents of this Affidavit, via telephone.

_____
James E. Gates
United States Magistrate Judge

8